# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. McIntyre*, 2011 IL App (2d) 100889

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY J. McINTYRE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0889 |
| Filed | December 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for unlawful possession of a weapon by a felon and possessing a weapon without a FOID card were reversed where the State failed to established defendant's guilt of unlawful possession of a weapon by a felon under either an accountability theory or a theory that he constructively possessed a weapon. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 08-CF-4060; the Hon. John R. Truitt, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Thomas A. Lilien and Sherry R. Silvern, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices McLaren and Hutchinson concurred in the judgment and opinion. |

## OPINION

¶ 1    At issue in this appeal is whether defendant, Anthony J. McIntyre, was proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)). For the reasons that follow, we determine that he was not. Thus, we reverse his conviction of that offense in addition to his conviction of possession of a weapon without a firearm-owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2008)).

¶ 2    At defendant's jury trial it was revealed that, on October 12, 2008, defendant, a convicted felon, accompanied Guadalupe Garcia, who was not a convicted felon, to a bar in Rockford. Garcia had a firearm concealed in the crotch of his pants. Garcia testified that he neither told defendant about the gun nor showed it to him. When the bar closed at around 2 a.m., Garcia was out in the parking lot and a black man confronted him. After Garcia and the black man engaged in a verbal altercation, the black man told Garcia that he had something for him and then drove away. Garcia believed that the black man meant that he had a weapon. Garcia asked defendant to drive him in defendant's Suburban so that he could fight the man. Although defendant initially attempted to dissuade Garcia from doing so, he nevertheless drove Garcia to a home close to the bar.

¶ 3    When defendant pulled up to the home, a black man was standing on the front porch with a woman who was later identified as Spring Starks. Starks testified that she could not see anyone inside of the Suburban. However, she soon noticed that shots were being fired from the Suburban. According to an officer who interviewed Starks after the shooting, Starks told the police that the passenger in the Suburban displayed a handgun out of the window and then fired it. After a few shots were fired, the Suburban remained in front of her house for a few seconds but then left. Starks testified that the Suburban was in front of her home for 1 to 1½ minutes and that it was parked so that the passenger side of it faced her home. Starks also stated that no one exited the Suburban while it was parked in front of her house.

¶ 4    Soon thereafter, Officer Jessie Geiken was responding to a dispatch concerning the shots fired at Starks' home when he saw defendant speeding. Defendant's Suburban matched the

description of the car that was involved in the shooting at Starks' home. Geiken activated the mars lights on his squad car and followed defendant's Suburban. Defendant slowed his car down to 10 miles per hour and eventually stopped a few seconds later and within two blocks.

¶ 5    After the Suburban was stopped, defendant and Garcia were ordered out of the car. When Garcia exited, Geiken could see one or two inches of a gun sticking out from underneath the right side of the front-passenger seat.[1] Garcia admitted at trial that he shoved the gun under the seat after leaving Starks' home.

¶ 6    After seeing the gun, Geiken spoke with defendant about the shooting. As relevant here, defendant told Geiken that, when he and Garcia arrived at Starks' home, he exited the Suburban to go fight with the black man. Defendant was walking around the Suburban when he heard shots being fired. Defendant looked back at his car and saw Garcia hanging out of it and firing a handgun at the black man. Defendant, who was surprised by Garcia's actions, returned to his Suburban and attempted to drive home because he wanted to prevent Garcia from shooting the black man. Defendant told Geiken that he had no idea from where the gun had come and that he knew Garcia had the gun only after Garcia started firing it at the black man. As defendant told Geiken about the shooting, defendant appeared to be very upset at Garcia.

¶ 7    At trial, Garcia confirmed that defendant knew nothing about Garcia's plan to fire the gun at the black man and that defendant was surprised and upset about Garcia doing so. However, Garcia also stated that defendant never left the Suburban while it was parked in front of Starks' home. Rather, according to Garcia's testimony, defendant was seated next to Garcia when Garcia pulled the gun out of his crotch and pointed it out of the Suburban and at the black man.

¶ 8    Moreover, Garcia admitted at trial that when he spoke with the police right after the shooting he lied about what had happened. Specifically, when questioned by the police at the scene, Garcia indicated that he did not know anything about the gun found under the seat on which he was sitting. Garcia also never told the police that he went to Starks' home to fight or that he asked defendant to drive him there. Garcia, who was charged with the same offenses as defendant, also admitted at trial that he entered into a plea agreement with the State.[2] Pursuant to that agreement, Garcia pleaded guilty to aggravated unlawful use of a weapon and possessing a firearm without a FOID card, in return for a three-year sentence.

¶ 9    The jury, which was instructed on accountability and constructive possession, found defendant guilty of unlawful possession of a weapon by a felon and possession of a firearm without a FOID card. Defendant moved for a new trial, arguing, among other things, that he was not proved guilty beyond a reasonable doubt. The trial court denied the motion, and,

[1]Photographs taken of the Suburban after the stop reveal that the gun was in a space between the leather portion of the front-passenger seat and the plastic base, nearest the front-passenger door.

[2]Garcia, like defendant, was charged with unlawful possession of a weapon by a felon, possession of a weapon without a FOID card, aggravated unlawful use of a weapon, and aggravated discharge of a firearm.

after determining that the conviction of possession of a firearm without a FOID card merged into the conviction of unlawful possession of a weapon by a felon, the trial court sentenced defendant to three years' imprisonment. This timely appeal followed.

¶ 10    At issue in this appeal is whether defendant was proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon. To prove a defendant guilty of unlawful possession of a weapon by a felon, the State must establish that the defendant (1) knowingly possessed the firearm and (2) had been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2008); *People v. Chirchirillo*, 393 Ill. App. 3d 916, 922 (2009).

¶ 11    Defendant argues that the evidence failed to establish beyond a reasonable doubt that he was proved guilty either under an accountability theory or as a principal. Concerning his claim that he was not proved guilty as a principal, defendant contends that the State did not prove that he actually possessed the weapon or that he constructively possessed it. In response, the State essentially concedes that the evidence did not establish that defendant had actual possession of the weapon. However, the State argues that defendant was proved guilty under either an accountability theory or a theory that he constructively possessed the weapon. Thus, we consider only those theories.

¶ 12    The first issue we address is whether defendant was proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon under an accountability theory. We review this issue *de novo*. *Chirchirillo*, 393 Ill. App. 3d at 921. In order for a defendant to be found guilty under an accountability theory, the State must first establish a *prima facie* case against the principal. *Id.* at 925. Once the State has done so, the State must then prove that the accomplice, either before or during the commission of the offense, and with the intent to promote or facilitate such commission, solicited, aided, abetted, or agreed or attempted to aid the principal in the planning or commission of the offense. *Id.* Thus, here, in order to prove defendant guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon under an accountability theory, the State needed to prove that Garcia knowingly possessed the weapon, that Garcia was a convicted felon, and that defendant somehow helped Garcia accomplish the crime. *Id.* at 925-26.

¶ 13    Lacking in this case is any evidence that Garcia was a convicted felon. Rather, the only evidence presented at trial on this issue revealed that Garcia was not a convicted felon when he had the gun. Accordingly, because the State failed to establish that Garcia committed the offense of unlawful possession of a weapon by a felon, defendant could not be found guilty of that offense under an accountability theory. *Id.* at 926-27.

¶ 14    Noting that this court followed *Chirchirillo* in *People v. Gibson*, 403 Ill. App. 3d 942 (2010), *pet. for leave to appeal pending*, No. 111097, defendant asks us to hold our decision in this case in abeyance until our supreme court renders a decision in *Gibson*. We decline to do so, as *Gibson* raises issues other than under what circumstances a defendant may be held accountable for the actions of the principal and *Chirchirillo* is directly on point.

¶ 15    Having concluded that defendant was not proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon under an accountability theory, we next address whether he was proved guilty under a theory that he constructively possessed the weapon. When a defendant challenges the sufficiency of the evidence, a reviewing court will not set

aside the conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. See *People v. Hampton*, 358 Ill. App. 3d 1029, 1031 (2005). When reviewing a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 16    To prove that defendant constructively possessed the weapon, the State had to establish that defendant (1) had knowledge of the presence of the weapon and (2) had immediate and exclusive control over the area where the weapon was found. *Hampton*, 358 Ill. App. 3d at 1031. Defendant contends that the State failed to establish either. We believe that, regardless of defendant's knowledge of the weapon (and the evidence indicates that defendant was aware of the gun from the time the shots were fired to the traffic stop by the police), the State failed to prove that defendant had immediate and exclusive control over it. Thus, defendant was not proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon based on a theory of constructive possession.

¶ 17    "A person's knowledge of the place or location of the [item] alleged to be possessed is not the equivalent of possession." *People v. Day*, 51 Ill. App. 3d 916, 917 (1977). Likewise, "proximity to the items at issue is not sufficient to show possession." *Id.* Moreover, a defendant's "status as owner-driver of the vehicle does not put him into possession of everything within the passenger area when there are passengers present who may, in fact, be the ones in possession of the contraband." *Id.* at 918. That is not to say, however, that possession may not be jointly held by the owner-driver and other passengers. See *People v. Givens*, 237 Ill. 2d 311, 335 (2010). But, even in cases where there is joint possession, the evidence must support a conclusion that the defendant had control, or the ability to exercise control, over the contraband. See *id.*

¶ 18    Here, the evidence revealed that the gun was found in an opening between the plastic base of the front-passenger seat and the leather portion of that seat, on the side of the seat that was closest to the front-passenger door. Given that, we cannot conclude that the evidence established that defendant had control, or the ability to exercise control, over the weapon.

¶ 19    Having concluded that the State failed to establish defendant's guilt of unlawful possession of a weapon by a felon, we next consider whether defendant's conviction of possessing a weapon without a FOID card may stand. We conclude that it may not, as the State failed to establish that defendant possessed the weapon. See *People v. Seibech*, 141 Ill. App. 3d 45, 50 (1986) (noting that a defendant must knowingly possess a weapon, either actually or constructively, in order to be found guilty of unlawful possession of a weapon without a FOID card).

¶ 20    For these reasons, the judgment of the circuit court of Winnebago County is reversed.

¶ 21    Reversed.