2021 IL App (1st) 182632-U

SIXTH DIVISION
October 15, 2021

No. 1-18-2632

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 CR 10786 |
| | ) | |
| JOSEPH HILL, | ) | The Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court.
Justice Mikva and Justice Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial counsel was ineffective for failing to request a jury instruction on the affirmative defense of necessity to the armed habitual criminal charge where there was enough evidence to support the defense and defendant was prejudiced by the exclusion of this instruction.

¶ 2    Defendant, Joseph Hill, was convicted of armed habitual criminal and sentenced to seven years' imprisonment. Defendant appeals. For the reasons that follow, we reverse defendant's conviction and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4      On June 22, 2016, defendant was arrested shortly after an altercation with Leashia Allen, Sr. during which she was shot in the leg.

¶ 5      The State proceeded to trial against defendant on the charges of armed habitual criminal in violation of 720 ILCS 5/24-1.7(a) (West 2016), aggravated battery with a firearm in violation of 720 ILCS 5/12-3.05(e)(1) (West 2016), and reckless conduct under a lesser-included offense theory.

¶ 6      The evidence at trial is summarized as follows.

¶ 7      Leashia Allen, Sr. testified that around 4:00 A.M. on June 22, 2016, she was working as a security guard at Cook County Hospital. Allen took a lunch break and drove her vehicle to a gas station on Harrison Street and Independence Boulevard. Allen was wearing a uniform including a bullet proof vest and a gun belt, but there was no gun in her belt at that time. She testified that her .22 caliber Barretta semiautomatic handgun was locked in a box in the trunk of her vehicle. On cross examination, however, Allen stated that she was carrying her gun in her gun belt. She did not have a revolver with her. At the gas station, Allen saw an African American male dressed in white, who she identified in court as Joseph Hill, walking towards her. As defendant approached, Allen observed that he was carrying a black revolver. Defendant pointed the gun at Allen and said, "give me your money, give me your keys." Allen threw her keys, but defendant continued to point the gun at her and then told her to get in her car. Allen then grabbed the barrel of the gun, which was pointed at the lower half of her body. Allen testified that she keeps crazy glue, razors, and a small screwdriver on her for self-defense. She tried unsuccessfully to use these items against defendant. As defendant and Allen struggled over the gun, defendant shot Allen in the leg. Allen fell to the ground and called for help. She observed defendant running away down Harrison Street.

Allen called 911 and spoke to them while she was on the ground. Allen testified that she identified defendant as her assailant at the scene. In court, Allen identified the black revolver as the one used by defendant to shoot her.

¶ 8 Syed Oumar testified that he was working in the gas station at the time the shooting occurred. Oumar heard a gunshot and called 911. He saw a man dressed in white running away from the gas station and heard a woman shout. Oumar did not see the altercation between defendant and Allen, nor did he see the shooting itself.

¶ 9 Sergeant Jesus Enriquez testified that he was on patrol near the intersection of Harrison and Independence when he observed a man dressed in white running away from the gas station into an alley "right next to" the gas station. Sergeant Enriquez identified defendant in court as the man he saw. Sergeant Enriquez heard a woman at the gas station cry for help. Sergeant Enriquez followed defendant into an alley and detained him. Sergeant Enriquez observed a bulge in defendant's clothing near his waistband, so he performed a pat-down. Sergeant Enriquez removed a .357 magnum revolver from defendant's waistband and threw it to the side. Defendant was handcuffed as other officers responded to secure the scene. Another police officer, Officer Bednarczyk, took defendant back to the gas station where he was identified by Allen as the person who shot her.

¶ 10 Officer Bednarczyk testified that he responded to the alley where defendant was being detained after observing the activated lights on Sergeant Enriquez's squad car. There was a gun next to the squad car. Officer Bednarczyk took defendant back to the gas station where Allen was given the opportunity to identify him. Officer Bednarczyk did not recall seeing any injuries on defendant.

¶ 11    Evidence Technician Sergio Glowacki testified he recovered and inventoried the revolver found in the alley. It had one fired cartridge and five unfired cartridges. He also took pictures of the scene. He did not recover any keys, nor did he recall a taking a photo of car keys on the ground.

¶ 12    Fred Tomasek, a forensic scientist employed by the Illinois State Police, testified as an expert in the field of firearm and tool mark identification. Tomasek testified that the fired cartridge was fired from the revolver found when defendant was arrested, and that the gun could not be fired by someone holding the barrel.

¶ 13    Detective Steven DeSalvo testified that he performed a gunshot residue swab on defendant's hands and clothing after defendant was transported to the police station.

¶ 14    Mary Wong, a forensic analyst with the Illinois State Police, testified as an expert in trace chemistry, gunshot residue analysis. Wong had examined three samples from the gunshot residue test administered to defendant using a scanning electron microscope. One sample from defendant's right hand contained gunshot residue that would have come from both the back of the gun and the barrel of the gun when it was fired. Wong did not examine a gunshot residue test from Leashia Allen.

¶ 15    Detective Thomas Conley interviewed Allen later that day, and she told him she had offered defendant her car keys but he refused them. She did not mention the screwdriver, glue or razor blades. He also testified there was no record of Allen's 911 call.

¶ 16    The State and defendant stipulated to defendant's two predicate convictions for the charge of armed habitual criminal in cases 01 CR 0149301 and 96 CR 1695701 and certified copies of those convictions were entered into evidence.

¶ 17    Defendant moved for a directed verdict, and his motion was denied. Defendant then called two witnesses.

¶ 18    Ashley Schuchart, an investigator for the Office of the Cook County Public Defender, testified that on October 28, 2017, she interviewed Allen. Allen told Schuchart that she had been shot outside of a gas station while doing unarmed security for Cook County Hospital. Allen told Schuchart that her guns were locked in the trunk of her car on the night she was shot, and the revolver recovered at the scene was not hers. Allen also told Schuchart that she had beat up a man who had kidnapped her daughter and because of that incident, she "was charged with something and they took all of her guns away" so she was unable to work as an armed security guard.

¶ 19    Defendant testified that he went for a walk around 3:30 in the morning to clear his head after an argument with his girlfriend. Defendant stopped to sit on a bench outside of a gas station. Defendant then approached Allen to ask her for a cigarette. Allen responded, "why would you ask me for a fucking cigarette if you see this blue in my hair?" Defendant replied, "why you gotta be so jazzy with me, bitch?" Allen then said, "I got your bitch," and pulled her gun from its holster. Defendant, fearing for his life, grabbed for the gun, and the two struggled over it. Defendant was not aware Allen had any other weapons on her. Defendant overpowered Allen, and the gun went off. Defendant denied pulling the trigger, stating that his hand was on the barrel of the gun when it went off. After the gun went off, defendant saw Allen fall to the ground. Once Allen let go of the gun, defendant put it in his waistband and ran towards a nearby alley. As defendant turned into the alley, he encountered police, and he stopped running. Defendant was searched by a police officer, who then arrested him. Defendant did not bring a gun with him from home that day, and he does not own a gun.

¶ 20    Without objection from defendant, the trial court gave the following jury instruction on the charge of armed habitual criminal. "A person commits the offense of armed habitual criminal when

5

he knowingly possesses a firearm after having been convicted of two prior qualifying felony offenses."

> "To sustain the charge of armed habitual criminal, the State must prove the following propositions:
>
> First Proposition: That the defendant possessed any firearm; and
>
> Second Proposition: That the defendant had previously been convicted of two prior qualifying felony offenses. * * *"

No instruction was given or requested on necessity or justified use of force related to this charge.

¶ 21    At defendant's request, the trial court gave Illinois Pattern Jury Instruction 24-26.06 regarding justified use of force on the aggravated battery with a firearm charge.

¶ 22    During deliberations, the jury asked two questions of the court. First, the jury asked what the legal definition of possession is with regard to the armed habitual criminal charge. The trial court responded with Illinois Pattern Jury Instruction 4.16 on the definition of possession. The jury also asked, "if the defendant had possession for a short time of the gun (10 to 20 seconds) acting out of self-defense, would that constitute possession?" By agreement of the parties, the trial court instructed the jury to continue to deliberate.

¶ 23    Defendant was found not guilty of aggravated battery and reckless conduct but was found guilty on the charge of armed habitual criminal. The trial court denied defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, in which defendant argued that a necessity instruction should have been given on the armed habitual criminal charge. Defendant was sentenced to seven years' imprisonment. Defendant's motion to reconsider his sentence was denied. This appeal follows.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant argues that his trial counsel provided ineffective assistance by failing to request a jury instruction on necessity (codified by 720 ILCS 5/7-13 (West 2016)) or justified use of force in self-defense (codified by 720 ILCS 5/7-1 (West 2016)) for the charge of armed habitual criminal. Defendant also argues that the trial court committed plain error in failing to provide these instructions to the jury.

¶ 26                          A. Ineffective Assistance of Counsel

¶ 27    Defendant argues that his trial counsel was ineffective for failing to request a jury instruction on necessity or justified use of force in self-defense for the armed habitual criminal charge.

¶ 28    "A criminal defendant has a constitutional right to effective assistance of counsel." *People v. Veach,* 2017 IL 120649, ¶ 29 (citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). We review a claim of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill.2d 504, 526 (1984). "To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *People v. Brown*, 2017 IL App (1st) 142877, ¶ 55 (citing *Strickland*, 466 U.S. at 687). In other words, "a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Wood*, 2014 IL App (1st) 121408, ¶ 60.

¶ 29    Generally, "in order to establish deficient performance, the defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial

7

strategy." *People v. Manning*, 241 Ill. 2d 319, 327 (2011) (quoting *People v. Smith*, 195 Ill.2d 179, 188 (2000)). "Where defense counsel argues a theory of the case, such as an affirmative defense, but then fails ensure that the jury is properly instructed on that theory, that failure cannot be called trial strategy." *People v. Gonzalez*, 385 Ill. App. 3d 15, 21 (2008).

¶ 30    A defendant is entitled to a jury instruction on an affirmative defense where sufficient evidence exists for a reasonable jury to find in his favor, even if the evidence is slight. *People v. Everette*, 141 Ill.2d 147, 156 (1990). The affirmative defense of necessity is appropriate when the evidence shows the defendant (1) was without blame in occasioning or developing the situation; and (2) reasonably believed his conduct was necessary to avoid a greater public or private injury than that which might have reasonably resulted from his own conduct. *People v. Guja*, 2016 IL App (1st) 140046, ¶ 47; 720 ILCS 5/7-13.

¶ 31    The elements of the affirmative defense of justified use of force in self-defense or defense of another are

> "(1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable." *People v. Gray*, 2017 IL 120958, ¶ 50.

¶ 32    We find there is evidence in the record to support an instruction on the affirmative defense of necessity. First, defendant testified that Allen initially became aggressive with him after he asked her for a cigarette, and she initiated a show of force by pulling her gun on him. As for the second element, defendant testified that he was afraid that Allen was going to shoot him, so he struggled with Allen for control of the gun. Defendant then testified that he grabbed the gun and

after it went off, he ran away from Allen while remaining in possession of the weapon. Defendant's testimony evidences his belief that it was necessary for him to take control of the gun to prevent imminent injury to himself. We find that this evidence is sufficient to support an instruction on the affirmative defense of necessity.

¶ 33    As for the affirmative defense of justified use of force, we also find there is enough evidence in the record to support this instruction. Defendant testified (1) that Allen threatened him with a gun; (2) that he did not threaten Allen first, and Allen testified that she was not afraid of defendant when he approached; (3) that Allen pointed the gun at defendant at point-blank range; (4) that he wrestled the gun from Allen to prevent himself from being shot; and (5) that he grabbed the barrel of the gun because he was afraid of being shot. As to (6), if it is true that Allen pointed a gun at defendant, it was objectively reasonable for defendant to believe he needed to take the gun from Allen to avoid being shot at close range.

¶ 34    The State argues that defendant's counsel was not deficient in failing to request a necessity or justified use of force instruction on the armed habitual criminal charge because the evidence did not support these defenses. The State argues that the evidence shows that defendant, like the defendant in *People v. Gibson*, 403 Ill. App. 3d 942 (2010), had a meaningful opportunity to abandon his possession of the weapon after the altercation with Allen, and therefore the affirmative defenses of necessity and justified use of force are not available to him.

¶ 35    In *Gibson*, the defendant was convicted of unlawful possession of a weapon by a felon under an accountability theory. *Id.* at 949. The defendant testified that he left his home with two others believing he was helping on a moving job. *Id.* at 951. Once the defendant embarked on the job, he was threatened with a gun and told he was part of an armed robbery. *Id.* at 945. The defendant testified that he was forced to help the others carry out their plan. *Id.* at 947. He did not

disobey because he was afraid for himself and his family, and he did not go to police because he was afraid the police would not believe his story. *Id.* We found that the affirmative defense of necessity was not available to the defendant because once he realized what was happening and "had opportunities to withdraw or ask for help," he instead continued to aid and abet the others in their criminal activity. *Id.* at 952. These "ample opportunities to withdraw" presented themselves over the course of at least an hour, and included the defendant being left alone by the others in a van without attempting to drive away or call 911, and the defendant encountering state troopers and police officers while driving without asking them for help. *Id.* Because the defendant failed to take advantage of these "reasonable alternatives" to aiding and abetting criminal conduct, and instead was further involved by helping the others get rid of the stolen truck and loading stolen property, we held the defendant was not entitled to a jury instruction on the affirmative defense of necessity. *Id.* at 952-953.

¶ 36    Here, there is some evidence to show that defendant did not have a meaningful opportunity to abandon his possession of the gun he claimed he took from Allen. Sergeant Enriquez and defendant both testified that defendant was detained shortly after he fled the scene in an alley directly next to the gas station where the altercation occurred. Furthermore, both Sergeant Enriquez and defendant testified that defendant stopped running upon encountering police and that police recovered the weapon from defendant nearly immediately. The testimony in this case is sufficient to ask the trier of fact whether defendant had ample opportunities to safely discard the weapon or call the police prior to being detained by Sergeant Enriquez to defeat the element of possession. Unlike *Gibson*, there is little evidence of reasonable alternatives to defendant continuing his possession of the gun.

¶ 37    The State also argues that a justified use of force instruction was not available to defendant because he was no longer at imminent risk of harm from Allen at the time he was arrested.

¶ 38    In response, defendant cites to *People v. Crowder*, 2018 IL App (1st) 161226. In *Crowder*, we considered whether the trial court erred in not providing either a necessity or self-defense instruction where the defendant was convicted of unlawful use of a weapon by a felon. *Id.* The defendant, Claude, and his father, Sammie, were assaulted by three men. *Id.* ¶ 8. Sammie was knocked off the porch where he was standing, and Claude became concerned that Sammie was unconscious. *Id.* Claude believed one of the men had a gun and heard the man threaten to shoot either himself or his father. *Id.* Sammie was legally in possession of a gun, which Claude took off him to fire a warning shot in the air. *Id.* Claude then ran down the street, where he was apprehended by police "in a matter of minutes." *Id.* Claude was found guilty of aggravated unlawful use of a weapon for possessing a firearm without a FOID card. *Id.* ¶ 15. On appeal, we reversed Claude's conviction, finding that "no rational trier of fact could find the State carried its burden with respect to negating either the defense of self defense or the defense of necessity." *Id.* ¶ 35. We found that "[i]t was not unreasonable for Claude to leave the scene with the weapon rather than leave it there *** " (*id.* ¶ 32) and that fact did not sufficiently undermine the other evidence in the record regarding necessity and justified use of force.

¶ 39    Here, defendant testified he possessed the gun for a matter of minutes, or less. The State argues defendant cannot claim necessity or justified use of force where he could have abandoned the gun while fleeing the gas station, and where he was no longer at imminent risk of harm from Allen. Similar to *Crowder*, we find defendant's testimony that for a few brief moments defendant continued his possession of Allen's gun after the altercation while running from Allen does not automatically disqualify him from claiming necessity or justified use of force as affirmative

11

defenses to the charge of armed habitual criminal. Instead, the credibility of defendant's testimony that he only possessed Allen's gun for a few moments to defend himself should be put to a jury that has been instructed on the elements of these affirmative defenses.

¶ 40    It is clear from the record that defendant's testimony provided some evidence that he was justified in his use of force as an affirmative defense to the charge of armed habitual criminal as it relates to the armed habitual criminal element of possession, but his counsel failed to request a specific jury instruction on this defense or on the defense of necessity. In addition, his counsel argued self-defense to the armed habitual criminal charge in closing.

> "[DEFENSE COUNSEL]: You hear the word armed habitual, and it sounds scary. But when you break it down, *** the law is not so ridiculous to believe that if somebody pulls a gun on you, you can't defend yourself. You can't reach out and grab that gun and try to avoid being shot. The law is not so ridiculous to say without legal justification you cannot have that gun, right?
>
> You are allowed to defend yourself, no matter who you are. *** So yes, he did have a gun, but the law says you're allowed to defend yourself."

Therefore, we cannot say that defense counsel's failure to request the jury be specifically instructed on these defenses was the result of sound trial strategy rather than deficient performance. *Gonzalez*, 385 Ill. App. 3d at 21.

¶ 41    Having established that counsel's performance was deficient for failing to request a jury instruction on either necessity or justified use of force in relation to the armed habitual criminal offense, we consider whether defendant was prejudiced by the failure to include these instructions. We find that he was.

¶ 42    The State argues that the jury was effectively instructed on justified use of force for the armed habitual criminal charge through defense counsel's closing argument, and under *People v. Huckstead*, 91 Ill. 2d 536 (1982), the failure to include a jury instruction on either justified use of force or necessity was not prejudicial. In *Huckstead*, our supreme court found that the failure to give a justified use of force instruction to the jury was not error where the "the instructions, in combination with the closing arguments by counsel for both sides, apprised the jury that the State had the burden of proving that defendant was not justified in the force he used." *Id.* at 545.

¶ 43    As discussed, defense counsel did argue justified use of force as a defense to the armed habitual criminal charge in closing argument. But defense counsel did not discuss the burden of proof on this defense. And in rebuttal, the State expressly denied that any defense, including either necessity or justified use of force, was available to defendant on the armed habitual criminal charge. The State argued,

> "[STATE'S ATTORNEY]: You want to talk about justification for using the gun. What you're going to see in the instructions, that under armed habitual criminal there is no extra sentence for he has the justification to possess that gun. That's a slam dunk. That's guilty as soon as you get back there because that's so simple. He's a multi-convicted felon. He can't possess a gun at any time whatsoever."

This argument from the State, in addition to the fact that neither counsel mentioned the burden of proof on an affirmative defense, undermines the State's claim that closing arguments sufficiently apprised the jury on either self-defense or necessity. *Contra Huckstead*, 91 Ill. 2d at 545 (no error in omission of self-defense jury instruction where defense counsel "repeatedly and specifically

emphasized that the State had the burden of proving defendant was not justified in the force he used" and the State "acknowledged this burden" in rebuttal.)

¶ 44    We find this case is similar to *People v. Newbolds*, 204 Ill. App. 3d 952 (1990). In that case, Newbolds was charged with aggravated battery and unlawful use of a weapon by a felon. *Id.* at 953. Newbolds was arguing with his girlfriend Cheryl, and she was shot in the mouth. *Id.* Cheryl related three versions of the events leading up to this incident. *Id.* In the third version, Cheryl was in possession of the gun after receiving it for protection earlier that evening from an unnamed friend. *Id.* at 954. She brandished it at Newbolds, and when he reached out to take it from her, the gun accidentally went off. *Id.* Defendant was acquitted of aggravated battery but found guilty of unlawful use of a weapon. *Id.* at 953. On appeal, we reversed his conviction and remanded for a new trial, finding that his attorney's failure to tender a necessity instruction constituted ineffective assistance of counsel and deprived him of a fair trial. *Id.* at 955. "Because the jury was not instructed on the defense of necessity, it cannot be said the jury knew that touching a gun to protect oneself does not constitute possession, whether actual or constructive, within the intendment of unlawful use of weapons by a felon. This is especially true in light of the jury's acquittal of defendant on the aggravated battery charge; clearly the jury chose not to believe Cheryl's initial statement to the police." *Id.* at 954.

¶ 45    Like in *Newbolds*, and unlike in *Huckstead*, the evidence in this case was close on the claims of self-defense and necessity. The only testimony regarding the facts of the altercation came from Allen and defendant. Their accounts differed greatly. There was no other evidence as to whether defendant had a gun when he approached Allen prior to the struggle, or whether defendant was without blame in getting possession of the gun. Ultimately, the credibility of defendant's claim that it was necessary for him to possess the gun to avoid injury to himself or others was a

determination for the jury to make. But the jury was not instructed on this issue, as indicated by their question to the trial court on whether defendant's possession could be legally justified. The jury's acquittal of defendant on the aggravated battery with a firearm charge also indicates the jury reasonably could have credited defendant's testimony over Allen's on the armed habitual criminal charge if it had been properly instructed on what constitutes possession where necessity or self-defense has been raised. Because "it cannot be said the jury knew that touching a gun to protect oneself does not constitute possession," defendant was deprived of an essential jury instruction. See *Newbolds*, 204 Ill. App. 3d at 954.

¶ 46    Where there is some evidence to support an affirmative defense, the jury must be instructed on this defense and the State's corresponding burden of proof. *People v. Cacini*, 2015 IL App (1st) 130135, ¶ 49. Here, the jury was never instructed on necessity or justified use of force as affirmative defenses to the armed habitual criminal offense, and neither the prosecutor nor defense counsel discussed the State's burden of proof on these defenses in closing argument. See *id.* ¶ 55 (distinguishing *Huckstead*, 91 Ill. 2d at 545). There is a reasonable probability, given the evidence in this case and the jury's acquittal of defendant on the aggravated battery charge, that the outcome of the trial would have been different if the jury was properly instructed. Therefore, we find that defendant was prejudiced by his counsel's failure to request a jury instruction on the defenses of necessity or justified use of force regarding the armed habitual criminal charge.

¶ 47    Defense counsel's failure to request an instruction on these affirmative defenses deprived defendant of effective assistance of trial counsel. Accordingly, we reverse defendant's conviction and remand for a new trial.

¶ 48                                      B. Plain Error

¶ 49 Defendant also argues that the trial court plainly erred in not providing a necessity or justified use of force instruction to the jury *sua sponte* on the armed habitual criminal charge. Because we find that defendant has successfully raised a claim of ineffective assistance of counsel, requiring the reversal of his conviction and remand for a new trial, we need not consider defendant's claim of plain error. In addition, we need not review defendant's request to correct the mittimus.

¶ 50                                   III. CONCLUSION

¶ 51 For the foregoing reasons, the judgment of the circuit court is reversed and this case is remanded for a new trial.

¶ 52 Reversed and remanded.