# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Herron*, 2012 IL App (1st) 090663

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PRESTON HERRON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-09-0663 |
| Filed | February 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for intimidation, home invasion, armed robbery and aggravated kidnapping were upheld over his contention that the identification testimony was insufficient to establish his guilt beyond a reasonable doubt, since the credible identification testimony of one witness was sufficient to support defendant's conviction, and even if the identification testimony of two other witnesses was not credible, defendant could not show that no rational trier of fact could have found defendant guilty beyond a reasonable doubt; however, the 15-year sentencing enhancement imposed for aggravated kidnapping was vacated due to the violation of the proportionate penalties clause and the cause was remanded for resentencing on that conviction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-21144; the Hon. Timothy Joseph Joyce, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; remanded for resentencing on the conviction for aggravated kidnapping. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Ginger Leigh Odom, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Kalia M. Coleman, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal arises from a February 27, 2009 judgment entered by the circuit court of Cook County which found the defendant, Preston Herron (Preston), guilty of intimidation, home invasion, armed robbery, and aggravated kidnapping. Preston was sentenced to 24 years' imprisonment for his offenses. On appeal, Preston argues that: (1) plaintiff-appellant the People of the State of Illinois (the State) failed to prove beyond a reasonable doubt that Preston was involved in any of the offenses that were charged against him due to the deficiencies in the witnesses' identifications; (2) his sentence for aggravated kidnapping is void because it violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11); and (3) his sentence for aggravated kidnapping is void and therefore should be vacated, leaving his other sentences intact. For the following reasons, we affirm in part and vacate in part the judgment of the circuit court of Cook County. We remand the matter for resentencing.

¶ 2                    BACKGROUND

¶ 3    On the morning of May 1, 2006, Cynthia Pitchford (Cynthia) was at home with four of her family members including: her husband, Clarence Pitchford (Clarence); her 17-year-old son, Cornelius Sanders (Cornelius); her 14-year-old daughter, Brittney Pitchford (Brittney); and her 7-year-old son, Clarence Pitchford, Jr. (Clarence, Jr.). The family's home is an apartment located at 3832 W. Lexington, Chicago, Illinois. While the children were getting ready for school, Cornelius heard a knock at the front door. Cornelius asked who was knocking, and a man outside the door said he was looking for Cynthia. As Cornelius opened the door, two men forced their way into the apartment. The first man wore a full ski mask and was carrying a gun. The second man was wearing a half-mask that covered the bottom part of his face, leaving his eyes exposed. The second man held his hand in his pocket as if

-2-

he was carrying a gun. Cynthia tried to push Brittney and Clarence, Jr., into Brittney's bedroom to keep them out of danger but the man with the gun told all the family members to gather in the living room.

¶ 4    The man with the gun demanded that the family members listen to and follow his instructions. The instructions called for Cynthia to drive the man with the gun to the Currency Exchange where she worked and give him the money that was in the safe. The other family members were to stay in the living room with the second man until that man received the signal to leave. The man with the gun threatened to harm Cynthia's oldest son Cordell, who was in prison at the time, and to shoot Clarence, Jr., if the family did not comply with his orders. Cornelius testified that while the two men were in the house, they referred to each other as "Lord." Cornelius also testified that the second man knew intimate details about the family, such as his brother's prison status and all of the family members' names.

¶ 5    Cynthia went to her bedroom to get her car keys and then left with the man holding the gun. Cynthia drove to the Currency Exchange at 1219 S. Kedzie, Chicago, Illinois, as the man with the gun concealed himself in the backseat. Once they arrived at the Currency Exchange, Cynthia parked as she normally does for work. The man with the gun told her that another man standing outside the Currency Exchange would be watching her. Cynthia was told to go inside, retrieve the money from the Currency Exchange, and return to the car with the money. Cynthia and the man with the gun got out of the car and Cynthia went inside. She did not see where the man with the gun went. Once she was inside, Cynthia crawled on the floor and called her coworker, Contessa Lindsey (Contessa), and told her to call the police. Cynthia then went to the safe and considered how much money she should give to the man with the gun. She knew from working the night before that the safe contained around $170,000, but she only took out $21,000. Cynthia returned to the car with the money and the man with the gun returned to the car as well. Cynthia explained the denominations of the money and gave it to the man with the gun. He checked the money and then left. Cynthia waited in the car for the police to arrive. After they arrived, the police escorted Cynthia to the police station.

¶ 6    Meanwhile, as Cynthia was taken to the Currency Exchange, the other family members remained in the living room with the second man. Cornelius and Brittney testified that the second man watched the family members in the living for about 10 minutes or so. Cornelius testified that the second man paced around the room a lot. Brittney testified that he sat in a computer chair and did not pace a lot. Cornelius recalled that the second man was wearing dark clothes, dark pants and black shoes, which were Nike Air Force One's. Brittney testified that the second man wore a colorful yellow, blue and white jacket. Cornelius and Brittney stated that while the second man was there, the house telephone rang but he did not allow them to answer it. After about 10 minutes, the second man received a call on his cell phone. He then left the house and on his way out the door he said "God bless." Cornelius then saw him get into a light blue and aqua Grand Prix and watched the car drive away. Cornelius could not see the driver. The police then arrived at the family's home.

¶ 7    The police escorted Clarence, Cornelius, Brittney and Clarence, Jr., to the police station. When they arrived, Cynthia was already speaking to police officers about the incident. Cornelius testified that on the way to the police station he began thinking about who the second man could have been. Cornelius testified that after arriving at the police station and talking with Brittney, he believed that Preston was the second man in the home invasion. Cornelius and Preston had known each other for about four years before the incident on May 1, 2006. Cornelius testified that he knew Preston from the neighborhood and that they used to socialize. Cornelius testified that he and Preston were not friends, but they had friends in common and had smoked marijuana together more than 100 times. Cornelius also testified that he and Preston had engaged in two fistfights in the past. One fight occurred two years before the home invasion incident and the other fight occurred six to eight months before the home invasion. Cornelius claimed that despite the fistfights, he and Preston had put aside their differences and he had no feelings of animosity toward Preston. When considering the identity of the second man in the home invasion, Cornelius testified that he began to realize that he recognized the man's voice, the shoes he was wearing, his mannerisms, and the language he was using. Cornelius stated that the two men's use of the word "Lord" in identifying one another suggested to him that the men were members of the Vice Lords street gang. Cornelius also stated that he recognized the second man's black Air Force One shoes as the same as those he knew to be owned by Preston. Cornelius testified that Preston also often used the term "God bless" upon departure. Cornelius stated that the combination of these factors, as well as his conversation with Brittney at the police station, confirmed his belief that Preston was the second man in the home invasion.

¶ 8    Brittney testified that once Cornelius told her that he thought Preston was the second man in the home invasion, she agreed with him and believed that she recognized Preston as well. She recalled that on the day before the incident, she saw Preston wearing the same colorful jacket as the second man in the home invasion. Brittney testified that she recognized Preston's mannerisms, described him as "jumpy," and stated that he "acts like he has Tourette's." After Brittney and Cornelius discussed their recollections, they were reunited with Cynthia. Cornelius and Brittney told Cynthia that they believed Preston was the second man in the home invasion and Cynthia agreed with their identification. Cynthia admitted in her testimony that she was greatly influenced by the discussion with her children in deciding that Preston was the second man in the home invasion. Cynthia recognized Preston's mannerisms and described him as "hyper." She also stated that Preston had a wandering eye. Cynthia testified that both men in the home invasion were wearing dark clothes and that the second man was wearing a hood in addition to a half-mask.

¶ 9    After Cynthia spoke with her children, she gave Preston's name to Detective Ryan Miller (Detective Miller). Detective Miller found Preston's picture in a police database and placed it in a photo lineup with other pictures. Cynthia picked out Preston's picture from the photo lineup. Later that day around 2 p.m., Detective Miller along with Detective Steven Amato (Detective Amato) and Detective Robert Fujara (Detective Fujara) went to talk to Cornelius at his grandmother's home located at 3304 W. Lexington, Chicago, Illinois. Detectives Miller and Amato showed Cornelius the same photo lineup that Cynthia was shown at the

police station. Cornelius also picked Preston's picture out of the photo lineup. Preston was held in custody of the Cook County sheriff's department from May 9, 2006 through June 9, 2006, and in jail from August 28, 2006 through June 21, 2007, on charges unrelated to the instant case.

¶ 10     On September 21, 2007, Cynthia was working with Contessa at the Currency Exchange at 1219 S. Kedzie, Chicago, Illinois. While she was working, Cynthia heard a voice that she immediately recognized as Preston's voice. Cynthia stood up, told Contessa that Preston was the man that was speaking, and locked the door. Cynthia testified that Preston then asked her why she locked the door. Cynthia replied "you know why." Preston said "Oh, you talking about the home invasion." Cynthia replied "yeah." Cynthia then called her boss to tell him what was happening and Contessa called the police. Officer Harold Rodriguez (Officer Rodriguez) responded to the call and arrived at the Currency Exchange 15 to 20 minutes later with his partner. Officer Rodriguez talked to Cynthia and then called the police station to verify that Cynthia had made a prior case report. He then placed Preston under arrest.

¶ 11     On September 22, 2007, Detective Andy Li (Detective Li) was assigned to investigate the home invasion. Detective Li interviewed Cynthia and she told him that she believed that Preston was the second man in the home invasion. Later that night, Detective Li conducted a physical lineup with Preston and three other subjects. Detective Li brought in Brittney and Cornelius to view the lineup and they each individually identified Preston as the second man in the home invasion. Preston was indicted on 1 count of armed robbery, 5 counts of home invasion, 18 counts of aggravated kidnapping, and 11 counts of intimidation.

¶ 12     On November 25, 2008, a bench trial commenced for Preston in the circuit court of Cook County. On December 19, 2008, after the State rested its case in chief, Preston presented a motion for a directed finding. The trial court denied Preston's motion and Preston presented his case in chief. On that same day, Preston was found guilty of home invasion, intimidation, aggravated kidnapping and armed robbery. On February 27, 2009, Preston was sentenced to 24 years' imprisonment. He was sentenced to five years' imprisonment for intimidation, nine years' imprisonment for home invasion, nine years' imprisonment for armed robbery, and nine years' imprisonment for aggravated kidnapping. The trial court also imposed an additional 15 years' imprisonment to the aggravated kidnapping sentence pursuant to section 10-2(b) of the Criminal Code of 1961 (Code) (720 ILCS 5/10-2(b) (West 2006)). The trial court ruled that his sentences were to run concurrently for a total of 24 years' imprisonment. Preston filed a notice of appeal on March 5, 2009.

¶ 13                                    ANALYSIS

¶ 14     We first examine Preston's argument that the State failed to prove beyond a reasonable doubt that he was guilty of any of the offenses for which he was convicted. Preston claims that the evidence at trial was insufficient to support a guilty verdict against him because: Cornelius identified him based on faulty logic; Brittney's testimony contradicted the testimony of the other witnesses; Cynthia was greatly influenced by the family conversation

in making her identification; the police failed to charge Preston with any crimes for a year and a half despite the fact that he was in custody on two separate occasions during that period of time; and the State failed to present any corroborating evidence of guilt. When reviewing a challenge to the sufficiency of the evidence, the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *People v. Brazziel*, 406 Ill. App. 3d 412, 421, 939 N.E.2d 989, 999 (2010). "It is not the reviewing court's function to retry the defendant or substitute its judgment for that of the trial court." *Id*. at 421-22, 939 N.E.2d at 999 (citing *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004)). The trial court is responsible for assessing the credibility of witnesses, determining the appropriate weight to give to testimony, and resolving inconsistencies in the evidence. *Id*. at 422, 939 N.E.2d at 999.

¶ 15     In Illinois, an identification that is vague or doubtful is not sufficient to support a conviction. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). However, a single witness's identification of the defendant is sufficient to support a conviction if the witness viewed the defendant under circumstances permitting a positive identification. *Id*. The trial court's judgment will not be overturned unless the evidence is "so unsatisfactory, improbable or implausible to justify a reasonable doubt as to the defendant's guilt." *Id*. (citing *People v. Johnson*, 114 Ill. 2d 170, 190, 499 N.E.2d 1355, 1363 (1986)).

¶ 16     Preston first argues that Cornelius' identification of Preston as the second man in the home invasion is wholly incredible because it is based on faulty logic. Identification testimony is generally assessed using the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), which include: (1) the opportunity the witness had to view the offender at the time of the crime; (2) the degree of attention given by the witness; (3) the accuracy of the witness's prior description of the offender; (4) the level of certainty the witness demonstrated when identifying the perpetrator in person; and (5) the amount of time lapsed between the crime and the in-person identification. *Slim*, 127 Ill. 2d at 307-08, 537 N.E.2d at 319. The trial court weighed these factors and found that all the witnesses had ample opportunity to view the defendant during the crime because the crime was committed during the early hours of the day in a well-lit room. Also, both Cornelius and Brittney testified that they watched Preston the entire time he remained in their home, studying his every move. As to the timing factor, the court noted that Cornelius was able to give an identification on the same day as the incident without evincing any hesitation. The trial court also noted that Cornelius knew Preston very well prior to the incident. The trial court reasoned that this familiarity aided in establishing Cornelius' identification. Weighing all these factors together, the trial court found Cornelius to be a credible witness. We find no reason to reject the trial court's reasoning.

¶ 17     Preston claims Cornelius' identification is unreliable because: he and Cornelius have been acquainted for years so Cornelius should have been able to immediately identify Preston as the half-masked man instead of realizing Preston's identity later at the police station; Cornelius' reliance on the use of the term "Lord" was misplaced because that is a common term used by most of the people in their community; Cornelius' reliance on the use of the

term "God bless" was misplaced because it is also a common term used by many people in the community; and part of Cornelius' identification was based on a pair of Air Force One shoes that are extremely popular in the community and that Cornelius himself owned at one time. We note that Cornelius did not rely on any one of these factors alone, however; it was the combination of all these factors that established Cornelius' identification of Preston. Furthermore, Cornelius testified that at the time of the home invasion, he was very scared and worried about the well-being of his family members. He was not focused on identifying the perpetrators because he was thinking about whether his mother was safe. Such a reaction is completely reasonable and understandable based on the circumstances that Cornelius and his family were facing. Once Cornelius calmed down, he was able to think about his observations and independently identified Preston as the second man in the home invasion.

¶ 18    Through a motion to cite additional authority, the State directs this court's attention to *People v. Barnes*, 364 Ill. App. 3d 888, 847 N.E.2d 679 (2006). In *Barnes*, the defendant approached a group of men at night while wearing a bandana that covered his face from the nose down. *Id*. at 890-91, 847 N.E.2d at 681-82. The man in the bandana said to the group " '[w]hat's up folks?' " and then began to fire a gun into the crowd. *Id*. One of the victims was familiar with the defendant from seeing the defendant on multiple occasions and recognized the unique size and shape of the defendant's nose. *Id*. at 891, 847 N.E.2d at 682. The victim was not able to identify the defendant until after he had helped take his brother to the hospital, because at the time of the shooting he was focused on the well-being of his brother and friend. *Id*. at 895, 847 N.E.2d at 685. The victim identified the defendant's picture in a photo lineup the following day. *Id*. at 891, 847 N.E.2d at 682.

¶ 19    In *Barnes*, the defendant's conviction was upheld based on the eyewitness testimony of the victim. *Id*. at 896, 847 N.E.2d at 685. The court held that the victim's identification was positive and consistent. *Id*. at 895, 847 N.E.2d at 685. The court also held that the persuasiveness of a witness's identification testimony is bolstered by prior acquaintance with the accused. *Id*. *Barnes* is analogous to the instant case. Like in *Barnes*, Cornelius and Brittney were able to observe Preston wearing a mask that covered the bottom portion of his face. Both Cornelius and Brittney testified that they recognized Preston's eyes. Also, similar to *Barnes*, Cornelius testified that he was able to identify Preston after he calmed down and knew his family was safe. Moreover, the level of familiarity between Cornelius and Preston is much greater than the familiarity between the victim and defendant in *Barnes*. Therefore, *Barnes* is particularly applicable to the instant case and its reasoning is instructive.

¶ 20    Preston also argues that Cornelius' identification was undermined by the fact that he and Cornelius had fought with each other on two prior occasions. Preston claims that their history makes it likely that Cornelius and his family have feelings of animosity toward Preston and that these feelings influenced Cornelius' identification. "[B]ias of a witness, whether favorable or adverse to the defendant, is always pertinent to the question of the witness' credibility." *People v. Young*, 118 Ill. App. 3d 803, 810, 455 N.E2d. 845, 851 (1983) (citing *People v. O'Dell*, 84 Ill. App. 3d 359, 372, 405 N.E.2d 809, 820-21 (1980)). In a bench trial, it is up to the trial judge to determine the credibility of the witness's identification testimony, weigh the evidence, and draw inferences from the evidence. *People v. Berland*, 74 Ill. 2d

286, 305-06, 385 N.E.2d 649, 658 (1978). At trial, Cornelius testified that he harbored no animosity toward Preston. He stated that despite their fights in the past, Cornelius and Preston had put their differences aside and were cordial with each other by the time of the home invasion. The trial court had ample opportunity to observe Cornelius, weigh his testimony, and consider any bias that he may have displayed toward Preston. The trial court ruled that the prior fights with Preston in no way established Cornelius as an incredible witness. We find no basis upon which to reject the trial court's reasoning and ruling. The trial court's reasoning as to Cornelius' identification and credibility was not unsatisfactory, improbable or implausible. After reviewing the trial court's reasoning, we reject Preston's argument. It is clear that a rational trier of fact could have found Preston guilty of intimidation, home invasion, armed robbery and aggravated kidnapping beyond a reasonable doubt.

¶ 21    Next, Preston argues that Brittney's and Cynthia's identifications were wholly incredible. Preston claims that Brittney's identification was incredible because her description of the clothes worn by Preston during the home invasion contradicted Cornelius' and Cynthia's descriptions. Preston also claims that Brittney's identification was influenced by her conversation with Cornelius at the police station. Preston argues that Cynthia's identification was incredible because she admitted that her discussion with her children at the police station greatly influenced her belief that Preston was the second man involved in the home invasion. However, as previously noted, a single witness's identification of the defendant is sufficient to support a conviction if the witness viewed the defendant under circumstances permitting a positive identification. *Slim*, 127 Ill. 2d at 307, 537 N.E.2d at 319. Therefore, Cornelius' identification alone is sufficient to support Preston's conviction. Because we hold that Cornelius' identification and testimony at trial were credible, we do not need to discuss the credibility of Brittney's and Cynthia's identifications. However, we note that even if we were to consider Preston's arguments as to Brittney's and Cynthia's identifications, Preston would not be able to show that no rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. We hold that in light of the credibility of Cornelius' identification and testimony, the credibility of Brittney's and Cynthia's identifications was superfluous and did not have an impact on the outcome of the case.

¶ 22    Preston next argues that his conviction should be reversed because the police did not arrest him in connection with the home invasion until a year and a half after the crime. Preston claims that the lapse in time between the crime and his arrest suggests that the police did not find the identifications from the Pitchford family to be credible. In response, the State argues, and we agree, that Preston's assertion is purely speculative and completely unsupported by the record. Preston offers no citation to the record that shows that the police ever doubted any information they received from the Pitchford family. Also, Preston offers no citation to case law to support his argument that the time lapse between the crime and his arrest negates eyewitness identifications. Therefore, we hold that Preston's argument is grounded in speculation and is without merit.

¶ 23    Also, Preston argues that his conviction should be reversed because the State failed to present any corroborating evidence of guilt. Preston claims that the State could have

presented physical evidence such as the gun used by the first man, DNA and fingerprint evidence, or evidence that Preston benefitted from the stolen money. He argues that the lack of physical evidence shows that there was no proof beyond a reasonable doubt to find him guilty of any crimes. The State points out that the absence of physical evidence corroborating eyewitness identifications is not in itself a reason for reversal, since a single eyewitness identification can sustain a conviction. *People v. Negron*, 297 Ill. App. 3d 519, 529, 697 N.E.2d 329, 336 (1998). We agree with this reasoning. The State was not required to present corroborating physical evidence at trial. Because the trial court found Cornelius' identification and testimony to be credible, the lack of physical evidence had no bearing on Preston's conviction. Thus, we hold that Preston's arguments as to the lapse of time between the crime and his arrest, and the lack of physical evidence, are unpersuasive and do not raise a reasonable doubt as to Preston's guilt.

¶ 24    We next examine Preston's argument that his sentence for aggravated kidnapping violated the proportionate penalties clause of the Illinois Constitution. The proportionate penalties clause states "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence can violate the proportionate penalties clause if: (1) it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community; or (2) it is greater than the sentence for an offense with identical elements. See *People v. Hauschild*, 226 Ill. 2d 63, 74, 871 N.E.2d 1, 7-8 (2007). The offense of aggravated kidnapping under section 10-2(a)(6) of the Code (720 ILCS 5/10-2(a)(6) (West 2006)) requires that the defendant kidnap a person while armed with a firearm. An amendment to section 10-2 states that "[a] violation of subsection (a)(6) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court." 720 ILCS 5/10-2(b) (West 2006). The normal sentencing range for a Class X felony is 6 to 30 years. 730 ILCS 5/5-8-1(a)(3) (West 2006). Thus, with the 15-year enhancement, the sentencing range for aggravated kidnapping under section 10-2(a)(6) of the Code is 21 to 45 years. The offense of armed violence predicated on kidnapping requires the defendant to kidnap a person while armed with a dangerous weapon. 720 ILCS 5/33A-1(c)(2), 33A-2(a) (West 2006). Armed violence predicated on kidnapping is punishable by 15 to 30 years in prison. 720 ILCS 5/33A-3(a) (West 2006).

¶ 25    Specifically, Preston points out that the elements of aggravated kidnapping are identical to the elements of armed violence predicated on kidnapping. However, he argues that the 15-year enhancement for an aggravated kidnapping conviction causes the sentencing range for aggravated kidnapping to be greater than the sentencing range for armed violence predicated on kidnapping. The State agrees and concedes that in light of the holdings in *Hauschild*, 226 Ill. 2d at 86-87, 871 N.E.2d at 14, and *People v. Christy*, 139 Ill. 2d 172, 181, 564 N.E.2d 770, 774 (1990), the 15-year enhancement on Preston's sentence for aggravated kidnapping violated the proportionate penalties clause and is therefore unconstitutional. We hold that the 15-year enhancement on Preston's sentence for aggravated kidnapping violated the proportionate penalties clause; thus, it is vacated.

¶ 26    Although the parties agree that Preston's sentence for aggravated kidnapping violated the

proportionate penalties clause, they are in dispute as to the appropriate remedy for the sentence. Both Preston and the State cite to *Hauschild*, among other cases, in support of their arguments. The court in *Hauschild* ruled that "when an amended sentencing statute has been found to violate the proportionate penalties clause, the proper remedy is to remand for resentencing in accordance with the statute as it existed prior to the amendment." *Hauschild*, 226 Ill. 2d at 88-89, 871 N.E.2d at 15. In *Hauschild*, the court found that the defendant's sentence for armed robbery violated the proportionate penalties clause. *Id*. at 86-87, 871 N.E.2d at 14. However, the court found that the defendant's sentence for attempted murder was also void because the 15-year enhancement *should have* applied to that charge. *Id*. at 80-81, 871 N.E.2d at 11. The court remanded the case for resentencing in order to allow the trial court to determine the length of the sentence for each offense while considering the defendant's sentence in totality. *Id*. at 81, 871 N.E.2d at 11.

¶ 27        Preston argues that the 15-year enhancement on his sentence for aggravated kidnapping should simply be vacated without being remanded for resentencing. He attempts to distinguish his sentence from the sentence in *Hauschild* in order to show that resentencing is not necessary. Preston argues that in the instant case, unlike in *Hauschild*, the trial court entered a proper sentence of nine years for the aggravated kidnapping offense. He points out that the trial court distinguished this portion of the sentence from the 15-year enhancement. Preston argues that because his 9-year sentence for aggravated kidnapping is proper, and the sentences for his other offenses are proper as well, this court should simply vacate the void 15-year enhancement of his aggravated kidnapping sentence instead of remanding it for resentencing. In support of his argument, Preston cites *People v. Baker*, 341 Ill. App. 3d 1083, 794 N.E.2d 353 (2003). The defendant in *Baker* was originally sentenced to 40 years in prison for the offense of aggravated kidnapping. The court held that the 15-year enhancement of the defendant's aggravated kidnapping sentence violated the proportionate penalties clause in comparison to the sentence imposed for armed violence predicated on kidnapping. *Id.* at 1090, 794 N.E.2d at 359. The court in *Baker* vacated the 15-year enhancement and ordered the trial court to issue an amended judgment to reflect that the defendant's sentence for aggravated kidnapping was 25 years. *Id*. We note that the defendant in *Baker* was also sentenced at trial to 30 years in prison for armed violence. *Id*. at 1084, 794 N.E.2d at 355. The sentence for armed violence was undisturbed by the appellate court. See *Baker*, 341 Ill. App. 3d 1083, 794 N.E.2d 353.

¶ 28        In response, the State argues that this court should follow *People v. Gibson*, 403 Ill. App. 3d 942, 934 N.E.2d 611 (2010). In *Gibson*, the defendant was convicted of aggravated kidnapping, among other charges, and sentenced to 12 years in prison with a 15-year enhancement. *Id*. at 954, 934 N.E.2d at 621. The appellate court held that the 15-year enhancement violated the proportionate penalties clause and was unenforceable. *Id*. The defendant in *Gibson* requested that the 15-year enhancement simply be vacated and his sentence be reduced to 12 years in prison for the aggravated kidnapping offense. *Id*. at 953, 934 N.E.2d at 620. The defendant in *Gibson* attempted to distinguish his sentence from the sentence in *Hauschild* using the same argument that Preston presents in the instant case. *Id*. at 955, 934 N.E.2d at 622. The court in *Gibson* rejected the defendant's argument. *Id*. The

court reasoned that the trial court did not state that it would still sentence the defendant to 12 years in prison if the 15-year enhancement was found to be invalid. *Id*. The court stated, "[w]e believe that there is a distinction between sentencing a defendant to a term of years *without* a comment regarding the possible invalidity of an enhancement and doing so *with* a comment regarding whether the invalidity of the enhancement would affect the unenhanced portion of the sentence." (Emphasis in original.) *Id*. Because the trial court sentenced the defendant in *Gibson* without comment as to the possible invalidity of the sentence enhancement, the appellate court held that the trial court must be given the opportunity to reevaluate the defendant's sentence in light of his cumulative sentences in accordance to the statute as it existed prior to the amendment. *Id*.

¶ 29      We elect to follow the reasoning in *Gibson*. The court in *Gibson* discussed the exact issue that is presented in the instant case. The court in *Gibson* also highlighted the importance of the trial court's consideration of a cumulative sentence in light of all the defendant's convictions. The trial court had the opportunity to view and weigh the significance of all the evidence and thus is in a better position than this court to impose a sentence. Therefore, we affirm Preston's convictions for intimidation, home invasion, armed robbery, and aggravated kidnapping, vacate the sentence for aggravated kidnapping, and remand this matter to the trial court for resentencing on the conviction for aggravated kidnapping.

¶ 30      We note that the parties submitted supplemental briefs on the issue of whether the trial court acted under a misapprehension of law when erroneously stating that all counts against Preston were "eligible for day-for-day credit." Preston's argument on this issue assumes *arguendo* that the 15-year sentencing enhancement for aggravated kidnapping is not vacated. However, the 15-year sentencing enhancement for aggravated kidnapping violated the proportionate penalties clause and is therefore vacated. Thus, we need not resolve this issue.

¶ 31      Affirmed in part and vacated in part; remanded for resentencing on the conviction for aggravated kidnapping.