2022 IL App (1st) 210314-U

No. 1-21-0314

Order filed February 22, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 3830 |
| | ) | |
| FLOYD JORDAN, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Walker specially concurred.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for armed habitual criminal over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2    After a bench trial, defendant Floyd Jordan was convicted of the offense of Armed Habitual Criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2018)) (predicated on prior felony convictions for Manufacture/Delivery of a Controlled Substance and Possession of a Controlled Substance with Intent to Manufacture/Deliver) and sentenced to seven years' imprisonment. On appeal, defendant

contends the State did not establish that he knowingly and intentionally possessed a firearm beyond a reasonable doubt. We affirm.

¶ 3    At trial, Chicago police officer Michael Nelson testified that on March 1, 2019, at approximately 10:56 p.m., he and his partner were in a marked police vehicle near the 500 block of West 57th Street in Chicago. They responded to a "shot spotter" report of an incident in the area, which was "vacant and desolate" with lighting near the streets and sidewalks.

¶ 4    Nelson observed defendant alone on the sidewalk, walking eastbound with his hands in his pockets. Nelson pulled over, announced his office, and ordered the defendant to stop. Defendant began running northwest through an empty field. Nelson chased defendant on foot as other officers arrived on scene.

¶ 5    With the aid of his flashlight, Nelson saw defendant "manipulate his waistband and retrieve a firearm," and then drop the firearm with a "slight lob." Nelson had an unobstructed view of defendant dropping the firearm from approximately 10 feet away. After defendant dropped the firearm, Nelson fell and lost sight of him for one or two seconds. When he resumed chasing defendant, "he could see flashlights coming [his] way with other officers yelling for [defendant] to stop." Defendant was detained approximately 10 to 15 feet from where he dropped the firearm. After defendant had been detained, Nelson "went back and retrieved the firearm." He also removed the magazine, which contained thirteen rounds with one live round in the chamber. The parties stipulated that the firearm recovered was a "black Taurus PT 24 slash 7G2 9 millimeter semiautomatic pistol."

¶ 6 Footage from a body worn camera (BWC) that Nelson was wearing during the incident was admitted into evidence and published at trial. Nelson testified that still shots recovered from that footage showed "a photograph of the gun laying on the ground" where he recovered it.

¶ 7 The BWC footage shows the illumination of Nelson's flashlight during the chase and a black firearm laying on the ground. Nelson can also be heard saying, "I got it. I got the gun." The footage does not show the defendant dropping the gun.

¶ 8 The State introduced stipulations that defendant did not have a properly issued Firearm Owners Identification (FOID) or concealed carry license, and also entered certified copies of defendants' convictions for the manufacture and delivery of cocaine in case number 00 CR 11405 and delivery of a controlled substance in case number 00 CR 15878.

¶ 9 In his closing argument, defense counsel asserted that the State failed to prove defendant had knowledge and control over the gun, that Nelson's testimony was not credible or corroborated by the BWC footage, and that no physical evidence linked defendant to the gun.

¶ 10 The court disagreed, finding Nelson to be a clear and credible witness who was not "impeached in any way." The court acknowledged that the BWC footage did not show defendant dropping the firearm. However, the court did not find this to be "dispositive" because "it's a quick period of time, and as the officer is running the camera is moving and it's not clear what is happening *** doesn't mean it didn't happen. It's just the video didn't capture it because of where it was placed on the body of the officer." The court further found that the video corroborated that the gun was "recovered right in the path of where the officer and the defendant just passed *** within seconds of the defendant being detained." The trial court found defendant guilty and sentenced him to seven years' imprisonment.

¶ 11    On appeal, defendant argues that Nelson's testimony that he observed defendant "lob" a gun on the ground while running through a dark lot is "contrary to human experience." Defendant further argues that the State did not present any evidence corroborating Nelson's testimony (i.e., ammunition, gunshot residue, or fingerprint evidence), which was "contradicted" by the body camera footage.

¶ 12    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. This court will not retry the defendant or substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id*. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 13    To sustain defendant's conviction for AHC, the State had to prove beyond a reasonable doubt that defendant possessed a firearm after having been convicted two or more times of certain qualifying offenses. 720 ILCS 5/24-1.7(a)(3) (West 2018).

¶ 14    To establish the element of possession, the State may introduce evidence that a defendant had actual or constructive possession of a firearm. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 21. Actual possession is proved where the evidence shows the defendant "exercised some form of dominion" over the item, "such as trying to conceal it or throwing it away." *People v. Scott*, 152 Ill App. 3d 868, 871 (1987). "Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence." *People v. Love,* 404 Ill. App. 3d 784, 788 (2010). The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where contradicted by the defendant. *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 15    Nelson testified that while chasing defendant, he observed him remove a firearm from his waistband and "lob" it on the ground. After defendant was detained by other officers, Nelson retrieved the firearm. The State introduced a video showing the chase and Nelson's subsequent retrieval of the firearm, as well as still frames showing the firearm on the ground after the chase. Because the State introduced evidence that defendant exercised control over the firearm by carrying and discarding it, the court properly determined that defendant actually possessed the firearm and committed the offense of AHC. See *Scott*, 152 Ill App. 3d at 871.

¶ 16    Defendant nevertheless contends that the State did not prove he discarded the firearm. He argues that Nelson's testimony is contradicted by his own body camera footage that shows he was "well-over 10 feet" from defendant when he was detained. Defendant disputes that Nelson actually observed defendant throw the firearm while running in a poorly-lit area.

¶ 17    Where a finding of guilty depends on eyewitness testimony, the reviewing court must decide whether a factfinder could reasonably accept the testimony as true beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. Testimony is insufficient only "where the record evidence

compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280.

¶ 18    We defer to the trial court's judgment regarding Nelson's credibility and the impact of any inconsistencies in his testimony. See *Brown*, 2013 IL 114196, ¶ 48. The trial court stated that "as the officer is running the camera is moving." Although it was not entirely "clear as to what was happening," that "doesn't mean that it didn't happen. It's just the video didn't capture it because of where it is placed on the body of the officer."

¶ 19    The body camera footage does not contradict Nelson's testimony in any significant way. For example, even if Nelson was more than 10 feet from defendant when he fell, this discrepancy does not establish that Nelson's entire testimony was unworthy of belief. See *Cunningham*, 212 Ill. 2d at 284 (noting the record contained no evidence showing that the only reasonable inference was that the discrepancies made the entirety of the testimony unworthy of belief). The record does not support the conclusion that no reasonable person could accept Nelson's version of events.

¶ 20    Finally, we do not agree with defendant's argument that the State was required to present corroborative evidence that he possessed the firearm. Nelson observed defendant demonstrate control over the firearm by discarding it while fleeing. See *People v. Herron*, 2012 IL App (1st) 090663, ¶ 23 (where the testimony of a single eyewitness is positive and the witness is credible, the State is not required to present corroborating physical evidence at trial). This evidence is consistent with video footage showing Nelson chasing defendant and subsequently retrieving a firearm. The evidence in the record does not compel "the conclusion that no person could accept it beyond a reasonable doubt." See *Cunningham*, 212 Ill. 2d at 280.

¶ 21    Taking the evidence in a light most favorable to the State, we find a rational trier of fact could have found defendant possessed a firearm. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 22    Affirmed.

¶ 23    JUSTICE PUCINSKI and JUSTICE WALKER, specially concurring:

¶ 24    Although our precedent does not require fingerprint testing to prove possession, such testing is the better practice for police so that the case does not come down to a witness credibility contest, and, more importantly to ensure accuracy in convictions. This court has recognized that evidence of fingerprint testing of the firearms "would have strengthened the State's case." *People v. Brown*, 2015 IL App (1st) 122581-U, ¶ 20.